IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN GADRA, | : | Civil No. 4:10-CV-0236 |
| Plaintiff, | : | |
| v. | : | (Chief Judge Kane) |
| C.O. 1 EISWERTH, et al., | : | (Magistrate Judge Carlson) |
| Defendants. | : | |

# REPORT AND RECOMMENDATION

## I. Introduction

The case of Jonathan Gadra presents the story of a prisoner-plaintiff who has repeatedly defaulted upon his obligations as a litigant to pursue the case which he filed in federal court. As set forth below, these defaults now have legal consequences, and it is now recommended that one consequence of these repeated defaults should be the dismissal of this action.

## II. Statement of Facts and of The Case

This is a *pro se* civil rights case that was first brought by a state prisoner, Jonathan Gadra, through the filing of a civil rights complaint on January 29, 2010. (Doc. 1) In his complaint, Gadra alleged that he has been subjected to episodes of excessive force by prison staff. (Id.) On April 26, 2010, the Defendants filed an answer to this complaint (Doc. 17) which, in part, asserted that the complaint should

be dismissed because Gadra had failed to file a timely administrative grievance within the prison, as required by the Prison Litigation Reform Act, prior to instituting this lawsuit in federal court. (Id.)

The Court then entered an order setting a discovery schedule in this case. (Doc. 23.) The Defendants, in turn, propounded discovery requests upon Gadra, including requests for admission that were aimed at confirming that Gadra had not complied with the prison's internal grievance process. Gadra's response to these discovery requests was first to ask for additional time in which to fulfill his obligation to provide discovery in the case which he filed. (Doc. 24.) We granted this request, and extended Gadra's deadline for responding to these discovery requests to July 7, 2010. (Doc. 27.) When this deadline approached, Gadra then filed a motion to stay discovery (Doc. 33), which we denied on July 9, 2010. (Doc. 34.)

Denied a stay of proceedings, Gadra did not comply with these discovery demands. Instead, he lodged a *pro se* appeal of this stay order, (Doc. 35) and began to systematically default on all of his litigation obligations in this case. Thus, Gadra never complied with his discovery obligations in this case. (Doc. 39.) Nor did Gadra comply with instructions from the Court of Appeals regarding his interlocutory appeal, defaults which led the appellate court to dismiss this appeal on September 20, 2010. (Doc. 37.)

Following the dismissal of this appeal, and the expiration of the discovery deadlines set by this Court, the parties were instructed to file dispositive motions or provide a status report on the status of this litigation no later than December 6, 2010. (Doc. 38.) The Defendants complied with these instructions from the court by filing a motion for summary judgment and brief on December 6, 2010. (Docs. 39 and 40.) This summary judgment motion, in part, sought dismissal of this complaint because of an earlier set of procedural defaults by Gadra; namely, his failure to file a timely administrative grievance coupled with his failure to respond to discovery demands. In contrast to the Defendants, Gadra–who brought this action in the first instance–never responded to this court order in any fashion.

Having received a potentially dispositive summary judgment motion, we then set a schedule for resolution of the motion, which called upon Gadra to respond to the motion on or before December 28, 2010. (Doc. 41.) Once again, Gadra has chosen not to reply in any fashion or comply with this court order. Thus, this matter is now ripe for resolution. For the reasons set forth below it is recommended that the Defendant's summary judgment motion be granted and Gadra's complaint be dismissed.

III. **Discussion**

A. **Under The Rules of This Court This Motion for Summary Judgment Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the Plaintiff should be deemed to concur in this motion, since Gadra has failed to timely oppose the motion, or otherwise litigate this case, despite being specifically instructed to reply to the motion. Indeed, as we have noted, the Plaintiff has defaulted on a series of important procedural deadlines in this case by failing to: (1) timely respond to discovery requests; (2) failing to prosecute the appeal which he filed; (3) failing to respond to the summary judgement motions filed in this case; and (4) failing to comply with numerous court orders directing Gadra to file briefs and respond to pending motions.

These repeated and persistent procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrant dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the Plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the

motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief..

Local Rule 7.6 (emphasis added).

The necessity of compliance with court orders and the local rules is a familiar principle for Gadra and one which was underscored in writing for the Plaintiff at the outset of this litigation. (Doc. 3.) Nonetheless, despite this explicit warning Gadra has not complied with the Local Rules, or this Court's order, by filing a timely response to this motion. Therefore, Gadra's latest procedural default compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998)

Lease v. Fishel, 712 F.Supp.2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we recognize a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose

the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiff has plainly failed to comply with Local Rule 7.6 by filing a timely response to the summary judgment motions filed by the Defendants. This wholly unexplained and unexcused failure to respond now compels us to apply the sanction called for under Rule 7.6 and deem the Plaintiff to not oppose this summary judgment motion.

### B. Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure also authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of

actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the Court of Appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action in its entirety. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has persistently failed to file pleadings, provide discovery or respond to court orders directing him to fulfill his litigation responsibilities.

Similarly, the second <u>Poulis</u> factor–the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. The Plaintiff's repeated failures to address fundamental issues in this litigation has resulted in protracted delays in this case. These repeated, unjustified, and unexplained delays have wholly frustrated the Defendants in defense preparations in this case, and have unreasonably delayed the resolution of this action. In such instances dismissal of the case clearly rests in the discretion of the trial judge. Indeed, such dismissal orders are frequently issued when a court is confronted by a litigant who persistently refuses to timely file and serve pleadings. <u>Tillio v. Mendelsohn</u>, 256 F. App'x 509 (3d Cir. 2007)(failure to timely serve pleadings compels dismissal); <u>Reshard v. Lankenau Hospital</u>, 256 F. App'x 506 (3d Cir. 2007)(failure to comply with discovery compels dismissal); <u>Azubuko v. Bell National Organization</u>, 243 F. App'x 728 (3d Cir. 2007)(failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the Plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The Plaintiff has repeatedly failed to file pleadings, provide discovery, respond to motions, and comply with orders of the Court throughout these proceedings. This persistent pattern of non-compliance is unexcused, and unexplained. This failure to abide by the minimal requisites for litigation–timely submission and service of pleadings and discovery–is delaying this case, and prejudicing the parties. This non-compliance simply cannot be condoned, and must be curtailed.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff. At this juncture, when the Plaintiff has failed to respond to motions or comply with multiple instructions of the Court directing the Plaintiff to take specific actions in this case, the Court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect a careless, reckless or intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See,

e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering numerous orders counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff still declines to obey court orders, refuses to comply with the court-imposed timetables, and otherwise blatantly ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, and only the sanction of dismissal remains available to the Court.

Finally, under Poulis we must consider one other factor, the merits of the parties' claims. In our view, consideration of this factor also strongly underscores that this action should be dismissed, since as a legal matter the Plaintiff has failed to state a valid Eighth Amendment claims against the Defendants because Gadra does not dispute that he failed to exhaust his administrative remedies with respect to this matter. Our merits analysis of the currently uncontested, summary judgment motion is set forth below.

**C. The Defendants Are Entitled To Summary Judgment on Gadra's Eighth Amendment Claims Since Gadra Does Not Dispute That He Failed To Exhaust His Administrative Remedies Before Filing This Lawsuit**

**1. Rule 56– The Legal Standard.**

The Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the

non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

### 2. Gadra Has Failed to Exhaust His Administrative Remedies

In this case, when assessing this summary judgment motion, there is much that is wholly undisputed. At the outset, it is undisputed that Gadra was served with a series of requests for admissions on April 30, 2010, which called upon Gadra to admit

that he had failed to comply with the prison grievance proceedings by filing a timely grievance challenging the conduct of prison staff, conduct which forms the basis of Gadra's current, federal claims. (Doc. 39-3.) It is also entirely undisputed that Gadra never responded to these requests for admission. (Id.) The legal significance of this procedural default, this utter failure to respond to requests for admission is also clear and undisputed. When a party like Gadra fails to file a timely response to a request for admissions, the matters set forth in the request are deemed admitted. F.R.Civ. P. Rule 36(b)(3). See, e.g., Federal Trade Comm'n v. Medicor, LLC, 217 F.Supp.2d 1048, 1953 (C.D. Cal. 2002)(failure to respond results in automatic admission, with no motion necessary, because Rule 36(b)(3) is self-executing). Therefore, in this case, by failing to respond to these requests for admission, Gadra is deemed to have admitted that he never properly exhausted the administrative remedies available to him in the prison prior to bringing this lawsuit.

Gadra's admitted failure to timely pursue these administrative remedies now has substantive significance for the Plaintiff since the Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion

requirement applies to a wide-range of inmate complaints, including damages complaints like those made by the plaintiff grounded in alleged violations of the Eighth Amendment. See Spruill v. Gillis, 372 F.3d 218 (3d. Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the

very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate-plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal

court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x. 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x. 178 (3d Cir. 2006).

Simply put, on these undisputed facts, these legal principles apply and are fatal to Gadra's claims. Since Gadra has failed to litigate these claims, and through this failure has admitted to previously failing to grieve these matters as he is required to do before proceeding to federal court, the Defendants are entitled to summary judgment in this case.

### IV. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' motions for summary judgment (Doc. 39) be GRANTED, and IT IS FURTHER RECOMMENDED that this case should be dismissed as to all Defendants and closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set

forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 4th day of January, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge